In the Matter of Harout KEVORK, Raffic Balian and Haig Gharakhanian.

In the Matter of a COMMISSION TO TAKE EVIDENCE PURSUANT TO the CRIMINAL CODE OF CANADA AND the U.S. CODE AND FEDERAL RULES, in Conjunction with a Canadian Prosecution, Styled

Harout Kevork, Raffic Balian and Haig Gharakhanian, Applicants-Appellants, and

Her Majesty The Queen, Respondent-Appellee.

No. 85–6275.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 1986.

Decided April 24, 1986.

---

Michael J. Lightfoot, Talcott & Vandevelde, Los Angeles, Cal., for applicants-appellants.

Robert Bonner, Robert Pallemon, Terree A. Bowers, Asst. U.S. Attys., Los Angeles, Cal., for respondent-appellee.

Before SCHROEDER and FLETCHER, Circuit Judges, and VOORHEES,* District Judge.

SCHROEDER, Circuit Judge.

## INTRODUCTION

Appellants Kevork, Balian, and Gharakhanian are in Canadian custody pending trial in Canadian courts for conspiracy to commit murder and attempted murder in Canada. They appeal from an order of the District Court of the Central District of California denying their motions to quash subpoenas and to suppress evidence obtained under the Foreign Intelligence Sur-

---

* Honorable Donald R. Voorhees, United States District Judge for the Western District of Washington, sitting by designation.

veillance Act (FISA), 50 U.S.C. §§ 1801–1811. They argue that FISA prohibits use or disclosure of evidence, obtained pursuant to its requirements, in a foreign criminal prosecution. They also argue that if such use is permitted, the Attorney General improperly delegated his duty to authorize use of FISA materials in this Canadian criminal proceeding.

We affirm. We conclude that there is no statutory bar to use of these materials in a foreign prosecution, and find that all safeguards contemplated by Congress have been provided in this case.

## FACTS

The appellants were indicted on May 1, 1985, in Ontario, Canada, for conspiracy to commit murder and attempted murder in connection with the attempted assassination of a Turkish attache in Ottawa during April 1982. In the course of FBI investigations of terrorism in the Los Angeles area, the FBI had established FISA electronic surveillance which produced evidence supporting the criminal charges against the appellants.

On May 8, 1985, the Supreme Court of Ontario issued an order for a commission to take the testimony of eight witnesses, including three FBI agents, at Los Angeles, California. The Ontario Supreme Court directed a letter of request in aid of the commission to the appropriate judicial authorities in Los Angeles. On June 12, 1985, the United States District Court for the Central District of California issued an order pursuant to 28 U.S.C. § 1782.[1] It appointed District Judge Fred Lacey, District of New Jersey, and Ontario Supreme Court Justice Eugene Ewaschuk as commissioners to obtain the evidence requested for use in the Canadian prosecution. The district court issued subpoenas summoning the eight witnesses named in the letter of request.

The commission began taking evidence on June 13, 1985. Pursuant to 50 U.S.C. § 1806(c), the appellants were informed of the government's intention to introduce evidence obtained through electronic surveillance under FISA. Appellants then moved to quash the subpoenas and to suppress all evidence obtained pursuant to FISA.

At the argument on those motions, the government introduced a document signed by Attorney General Meese authorizing the use of FISA information in the Canadian prosecution. FISA requires the Attorney General's authorization for use of FISA information in a criminal proceeding. 50 U.S.C. § 1806(b). Appellants objected on the ground that the Meese authorization did not comply with the statute.

After an *in camera* review of the FISA materials pursuant to 50 U.S.C. § 1806(f), Judge Lacey denied all of appellants' motions in a memorandum opinion and order dated August 5–6, 1985.[2] Judge Lacey found, *inter alia*, that there was no statutory bar to the use of FISA information in a foreign criminal proceeding, and that the Meese authorization was valid.

The commission resumed taking evidence on August 7, 1985. On the next day, Judge Lacey ordered that no portion of the commission's record containing FISA information would be certified unless and until Judge Lacey's rulings were affirmed on appeal. Appellants were ordered to join with the governments of Canada and the United States in seeking an expedited appeal.

---

**1.** 28 U.S.C. § 1782 provides, in pertinent part: The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct

that the testimony or statement be given or the document or other thing be produced, before a person appointed by the court.

**2.** It was agreed by all counsel that the motions should be decided by Judge Lacey sitting as a United States District Judge, because the decision involved application of the Foreign Intelligence Surveillance Act.

Accordingly, this is an appeal from the final decision of the district court in a proceeding pursuant to 28 U.S.C. § 1782. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

Appellants first argue that the subpoenas should have been quashed and the evidence suppressed because FISA prohibits the disclosure in a foreign criminal prosecution of surveillance information obtained pursuant to FISA.

■ FISA was enacted in 1978 to establish procedures for the use of electronic surveillance in gathering foreign intelligence information. *See United States v. Belfield,* 692 F.2d 141, 145 (D.C.Cir.1982). The Act was intended to strike "a sound balance between the need for such surveillance and the protection of civil liberties." S.Rep. No. 604, 95th Cong., 2d Sess. 9, *reprinted in* 1978 U.S.Code Cong. & Ad. News 3904, 3910.

FISA allows a federal officer, with the approval of the Attorney General, to apply to a specially constituted FISA court for an order approving electronic surveillance of "a foreign power or an agent of a foreign power for the purpose of obtaining foreign intelligence information." 50 U.S.C. §§ 1802(b), 1803, 1804(a). An "agent of a foreign power" is defined in part as "any person who ... engages in sabotage or international terrorism." 50 U.S.C. §§ 1801(b)(2).

■ The Act contains strict requirements as to the conditions which must be satisfied before surveillance may be authorized. *See, e.g.,* 50 U.S.C. §§ 1802, 1804, 1805, and 1811. Use and disclosure of FISA information, once it is gathered, is governed by 50 U.S.C. § 1806.

In arguing that the statute prohibits disclosure of FISA information for use in a foreign criminal prosecution, appellants rely on the provisions of section 1806, which establish conditions under which such information may be used for law enforcement purposes. The statute provides that information acquired pursuant to FISA may be used in a criminal proceeding only with the advance authorization of the Attorney General;[3] that an "aggrieved person" shall be notified before FISA information is used against him in any federal, state, or local proceeding;[4] and that such a person may move to suppress the evidence on the grounds that it was unlawfully acquired.[5] These conditions were all complied with in this case.

**3.** 50 U.S.C. § 1806(b). That section provides:
No information acquired pursuant to this chapter shall be disclosed for law enforcement purposes unless such disclosure is accompanied by a statement that such information ... may only be used in a criminal proceeding with the advance authorization of the Attorney General.

**4.** 50 U.S.C. §§ 1806(c), (d). Section 1806(c) provides:
Whenever the Government intends to ... disclose in any ... proceeding in or before any court ... or other authority of the United States, against an aggrieved person, any information obtained ... from an electronic surveillance of that aggrieved person pursuant to ... this chapter, the Government shall, prior to the ... proceeding or at a reasonable time prior to an effort to ... use that information ..., notify the aggrieved person and the court ... in which the information is to be disclosed or used that the Government intends to so disclose or so use such information.
Section 1806(d) provides:

Whenever any State or political subdivision thereof intends to ... disclose in any ... proceeding in or before any court ... or other authority of a State or a political subdivision thereof, against an aggrieved person any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this chapter, the State or political subdivision thereof shall notify the aggrieved person, the court ... in which the information is to be disclosed ..., and the Attorney General that the State or political subdivision thereof intends to so disclose or so use such information.
An "aggrieved person" is "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." 50 U.S.C. § 1801(k).

**5.** 50 U.S.C. § 1806(e). That section provides:
Any person against whom evidence obtained ... from an electronic surveillance to which he is an aggrieved person is to be ... introduced ... in any ... proceeding in or

These provisions, however, establish conditions upon domestic law enforcement use. They do not purport to limit use of FISA information in foreign proceedings. They certainly contain no bar to such use.

■ The appellants nevertheless contend that because notification and suppression procedures are required only in federal, state and local proceedings, Congress must not have intended FISA information to be made available in foreign criminal proceedings. There is no logical or historical support for such a position.

Appellants attempt to bolster their argument by reference to the historical background which led to FISA, and specifically the legislative history of FISA itself. They point out that, prior to passage of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, electronic surveillance data was not admissible in criminal prosecutions in this country. *See, e.g., Berger v. New York,* 388 U.S. 41, 115–16, 87 S.Ct. 1873, 1912–13, 18 L.Ed.2d 1040 (1967); *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). They point to nothing, however, which indicates that Congress or our courts ever viewed surveillance material as inadmissible in foreign proceedings. Indeed, it is not immediately apparent that such an issue has ever been decided under our law. *See United States v. United States District Court,* 407 U.S. 297, 321–22, 92 S.Ct. 2125, 2138–39, 32 L.Ed.2d 752 (1972).

Appellants also look to passages in the legislative history of FISA emphasizing Congress' intent to limit dissemination of this material to intelligence uses. *See, e.g.,* S.Rep. No. 604—Part I, 95th Cong., 2d

Sess. 52–53, *reprinted in* 1978 U.S.Code Cong. & Ad.News 3904, 3954 ("[U]ses to be made of the [FISA] information acquired by means of this chapter [must] be carefully restricted"). However, the same Senate report expressly contemplates the dissemination of foreign intelligence information to intelligence services of other nations. *Id.* at 54, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 3955.[6] The history of this Act clearly indicates that Congress intended to permit dissemination of surveillance information to foreign countries in connection with intelligence gathering. Nothing in its history suggests that Congress intended to limit any effective use of such information by precluding its admissibility in foreign judicial proceedings. Appellants advance no rational policy objective which would be served by allowing use of these materials in a domestic proceeding but preventing their use in a foreign proceeding. We cannot perceive any. The legislative history shows that Congress was concerned about assisting foreign governments in counteracting terrorism which occurs outside our borders. *See* S.Rep. No. 701, 95th Cong. 2d Sess. 12, *reprinted in* 1978 U.S.Code Cong. & Ad. News 3973, 3981. The prohibition which appellants urge would thwart that objective.

We conclude, therefore, that disclosure of FISA information for use in a foreign criminal prosecution is not prohibited by the Act. We turn now to appellants' contention that the Attorney General improperly delegated the authority reserved to him to approve disclosure of such information.

---

before any court, ... or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the evidence ... on the grounds that—

    (1) the information was unlawfully acquired; or

    (2) the surveillance was not made in conformity with an order of authorization or approval....

**6.** The Senate Report stated:

Finally, the Committee believes that foreign intelligence information relating to crimes, espionage activities, or the acts and intentions of foreign powers may, in some circumstances, be appropriately disseminated to cooperating intelligence services of other nations [so] long as all the procedures of this chapter are followed....

S.Rep. No. 604—Part I, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News 3955.

50 U.S.C. § 1806(b) states: "No information acquired pursuant to this chapter shall be disclosed for law enforcement purposes unless such disclosure is accompanied by a statement that such information, or any information derived therefrom, may only be used in a criminal proceeding with the advance authorization of the Attorney General." For purposes of the Act, "Attorney General" means "the Attorney General ... or the Deputy Attorney General." 50 U.S.C. § 1801(g). The legislative history indicates that Congress intended no further delegation of the Attorney General's authority in this regard. *See* S.Rep. No. 604—Part I, 95th Cong., 2d Sess. 36, *reprinted in* 1978 U.S.Code Cong. & Ad. News 3904, 3937–38.

The government in this case submitted an authorization of Attorney General Meese which concluded:

I hereby authorize the use in such criminal proceedings of certain tape recordings or transcripts from the electronic surveillance ... which ... was authorized by the United States Foreign Intelligence Surveillance Court.

This authorization is conditioned by the requirement that litigation in any Canadian court involving the legality of the FISA surveillance be coordinated with the Counsel for Intelligence Policy.

Appellants challenge the authorization on the grounds that it unlawfully delegates the Attorney General's authority to the Counsel for Intelligence Policy. The government correctly points out, however, that the statement authorizes disclosure or use of the evidence. Providing for coordination of litigation involving the legality of FISA surveillance with the Counsel for Intelligence Policy is not a delegation of the Attorney General's responsibility to authorize use in the first instance. Accordingly, we find that the Attorney General has properly authorized the use of this information in the Canadian criminal proceeding.

Affirmed.