**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: MOHAMED AL FAYED,
Appellant,

v.                                                    No. 99-1268

UNITED STATES OF AMERICA,
Intervenor.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(MISC-99-35)

Argued: December 3, 1999

Decided: April 26, 2000

Before LUTTIG and MOTZ, Circuit Judges, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Luttig and Senior Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Paul Christian Rauser, WILLIAMS & CONNOLLY,
Washington, D.C., for Appellant. Henry Thomas Byron, III, Appel-
late Staff, Civil Division, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Intervenor. **ON BRIEF:** Terrence
O'Donnell, WILLIAMS & CONNOLLY, Washington, D.C., for

Appellant. David W. Ogden, Acting Assistant Attorney General, Lynne A. Battaglia, United States Attorney, Mark B. Stern, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Seeking information related to the death of his son in a Paris car wreck that became the focus of international media attention, Mohamed Al Fayed filed an ex parte application with the district court for the issuance of a subpoena duces tecum to the National Security Agency (NSA). Al Fayed applied for the subpoena under 28 U.S.C. § 1782(a), which authorizes district courts, at the request of an "interested person," to order document production for use in proceedings in a foreign or international tribunal. Al Fayed claimed an interest in proceedings before a French magistrate judge investigating the crash that led to his son's death. The district court declined to issue the subpoena, citing national security concerns raised by NSA in its response to a Freedom of Information Act (FOIA) request. Because the district court did not abuse its discretion under § 1782, we affirm.

I.

In February 1999, Al Fayed asked the district court to issue a subpoena duces tecum for all NSA documents relating to two victims of a 1997 Paris car crash: Dodi Fayed and Diana, Princess of Wales. In addition, he sought all NSA documents relating to himself and to the principals in an alleged plot to sell him information supposedly originating in Central Intelligence Agency files.

Al Fayed applied for the subpoena under 28 U.S.C.§ 1782(a) (1994 & Supp. III 1997) which provides: "The district court of the district in which a person resides or is found may order him . . . to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the appli-

2

cation of any interested person . . . ." Al Fayed claimed to be an "interested person" in the now-closed investigation of Premier Juge d'instruction Herve Stephan into whether members of the press could be held criminally responsible for the crash.

Al Fayed contended that he had learned that NSA might possess information related to the crash after reading reports in the Daily Mail and the New York Daily News of surveillance by United States intelligence of Princess Diana, and after participants in the above-mentioned plot attempted to sell him supposed United States intelligence documents. In support of his application, Al Fayed offered a 1998 letter from NSA responding to a news agency's FOIA request for records related to Princess Diana. In that letter NSA acknowledged the existence of 182 documents in NSA files covered by the request, denied access to 39 classified NSA documents, and forwarded the request for the remaining documents to the originating agencies.

Under FOIA, an agency need not make documents available to the public that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1) (1994). The NSA response to the news agency's FOIA request specifically cited this provision--the first exemption from FOIA's otherwise broad commitment to government openness--in denying access to the classified documents. NSA's letter explained that the documents"are classified because their disclosure could reasonably be expected to cause exceptionally grave damage to the national security."

The district court assumed that the investigation by the French magistrate, then still ongoing, constituted "proceedings" to which § 1782 applied, and that Al Fayed was an "interested person" in those proceedings. The court viewed Al Fayed's application under § 1782, however, as an attempt "to make an end run around FOIA." Noting its broad discretion under § 1782, the court declined to issue a subpoena under that statute for documents that had already been identified by NSA as containing sensitive information pertinent to the national security.

3

Al Fayed appeals, arguing in part that the district court erred because it assumed that his application sought the same material as the news agency's FOIA request, when in fact it did not. The United States intervened, and in doing so informed us of a fact that Al Fayed had failed to mention: prior to applying to the district court for a subpoena, Al Fayed's attorneys had submitted their own FOIA request to NSA, asking for precisely the same material as Al Fayed now seeks under § 1782. NSA denied that FOIA request in July 1999, again citing FOIA's first exemption, 5 U.S.C. § 552(b)(1), and the possibility of "exceptionally grave damage to the national security."

Al Fayed conceded at oral argument that in September 1999 Juge Stephan closed his investigation into the role members of the press may have played in causing the car crash. According to press accounts, the investigation lasted eighteen months and involved over 200 interviews and 6,000 pages of evidence, after which the magistrate concluded that the driver's drunkenness was the "direct, immediate and certain cause of the accident."

Apparently, Al Fayed has exercised his right under French law to appeal the termination of the investigation, but this appeal is all that now remains of the "proceeding in a foreign . . . tribunal" that assertedly would be assisted by the issuance of a subpoena under § 1782. Although it is not clear whether a private party's appeal from a magistrate's decision to close a criminal investigation is the sort of "proceeding" to which Congress sought to extend the assistance of the federal courts, we do not decide the case on this ground. The question has not been briefed by the parties, and its resolution would require a somewhat detailed inquiry into a foreign body of law.

We need not undertake this inquiry, because the district court did not abuse its discretion under § 1782 in declining, on the record before it, to issue a subpoena to NSA.

II.

Section 1782 affords the district courts "wide discretion" in responding to requests for assistance in proceedings before foreign tribunals. See In re Esses, 101 F.3d 873, 876 (2d Cir. 1996); Lo Ka Chun v. Lo To, 858 F.2d 1564, 1565 (11th Cir. 1988). The 1964

4

amendments to § 1782, which expanded the range of "proceeding[s]" to which the district court might offer its assistance, were intended to enhance that discretion. See S. Rep. No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3788 ("[I]t is intended that the court have discretion to grant assistance when proceedings are pending before investigating magistrates in foreign countries."); see also In re Letters Rogatory from the Tokyo District, Tokyo, Japan, 539 F.2d 1216, 1218 (9th Cir. 1976) ("The statute . . . has had a history which reflects a desire on the part of Congress to increase the power of district courts to respond to letters rogatory" from foreign officials.).

In exercising its discretion under § 1782, the district court should be guided by the statute's "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." In re Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992). Al Fayed's ex parte application did not make clear how the issuance of the subpoena would serve Congress's "twin aims" in enacting and amending § 1782. Al Fayed did not demonstrate how the information he sought would assist his "participation" in the proceedings before the French magistrate. Nor does it seem plausible that the issuance of a subpoena for highly classified government documents would set an example that would encourage foreign governments to grant"similar means of assistance" to litigants in our courts.

The arguments and evidence Al Fayed did present in his application understandably elicited skepticism from the district court. Al Fayed, a private party, asked the district court to issue a subpoena ex parte to an agency whose work involves some of the most sensitive and necessarily secretive operations of the United States government. Rather than asserting rights under FOIA, the typical route for private parties to gain access to government documents, he invoked a statutory provision typically utilized by foreign judicial officials, occasionally utilized by prosecutors, plaintiffs and defendants in foreign judicial proceedings, and almost never utilized by persons in Al Fayed's position. He offered scant materials in support of his application, and he only summarily explained the purpose and function the requested documents would serve in the foreign proceeding. Disclosure of the documents sought in Al Fayed's application had

5

already been identified by NSA as potentially causing "exceptionally grave damage to the national security." Under these circumstances, the district court was well within its broad discretion to deny the application. The statute explicitly commits to the district court's discretion the determination of whether to grant a request for assistance in a foreign tribunal. The district court appropriately exercised that discretion here. See Esses, 101 F.3d at 876 ("Substantively, so long as the district court fashions its order in accordance with the `twin aims' of § 1782, . . . it acts within its discretion.").

Al Fayed argues that the district court erroneously assumed that the news agency's FOIA request asked for substantially the same material as Al Fayed's subpoena application. To the extent that that argument had any merit, it is now foreclosed by Al Fayed's own December 1998 FOIA request, which asked for precisely the same material for which he now invokes § 1782. NSA viewed Al Fayed's FOIA request, like that of the news agency, as raising serious national security concerns. To the extent NSA had documents covered by the request, it refused to disclose them under FOIA's first exemption, 28 U.S.C. § 552(b)(1). Al Fayed can seek judicial review of that determination, of course, see 5 U.S.C. § 552(a)(4)(B) (Supp. IV 1998), but in the absence of a finding that NSA improperly refused to disclose the documents, the agency's determination should be credited.

Congress's salutary purposes in enacting § 1782 simply do not anticipate the issuance of a subpoena for documents whose disclosure would be likely to harm the national security. Those purposes certainly do not require the release of documents properly classified as secret and therefore exempt from disclosure under FOIA's first exemption--at least not on the basis of an ex parte application with as little supporting justification as this one.

Because we decide the matter on narrower grounds, we need not reach the Government's argument that, based on principles of sovereign immunity and statutory construction, the United States is not a "person" from whom testimony can be required under § 1782.*

_____

*Al Fayed has also filed an application under § 1782 in Washington, D.C. for the issuance of a subpoena to the Central Intelligence Agency.

III.

The judgment of the district court denying the ex parte application is

AFFIRMED.

_____

The district court in that case initially issued a subpoena, and the Government moved for a protective order. The court recently held that "person" under § 1782 did "not include a federal agency, such as the CIA" and so quashed the subpoena. See In re Al Fayed , Misc. No. 99-43 (D.D.C. April 10, 2000).

7