Mohamed AL FAYED, Appellant,

v.

CENTRAL INTELLIGENCE AGENCY, Appellee.

No. 00–5150.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 6, 2000.

Decided Oct. 13, 2000.

David E. Kendall argued the cause for appellant. With him on the briefs was Paul C. Rauser.

H. Thomas Byron, III, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were David W. Ogden, Acting Assistant Attorney General, Mark B. Stern, Attorney, and Wilma A. Lewis, U.S. Attorney.

Before: WILLIAMS, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Appellant Al Fayed is the father of Dodi Fayed, who was killed in an automobile crash in Paris together with Princess Diana and the car's driver, Henri Paul. French juges d'instruction investigating the deaths declined to pursue criminal charges, but Al Fayed has exercised his right under French law to appeal that decision; he hopes also to exercise his right to present new evidence in the appeal. During the initial French proceeding, he filed an ex parte application in the district court here under 28 U.S.C. § 1782, seeking the issuance of a subpoena to the Central Intelligence Agency for documents relating to the crash. (Al Fayed also sought a subpoena of the Defense Intelligence Agency, but he and that agency have resolved their differences.) Section 1782 provides for discovery in the federal courts at the behest of foreign and international tribunals and persons interested in proceedings before such tribunals.

The district court granted the application and issued the subpoena. Al Fayed moved to compel compliance and the CIA moved to quash. The district court denied Al Fayed's motion and granted the CIA's. Interpreting the use of "person" in § 1782 (as used to define those subject to discovery, *not* those seeking discovery) to exclude the sovereign, it held that it lacked jurisdiction to issue the subpoena. *In re*

*Al Fayed*, 91 F.Supp.2d 137, 140–41 (D.D.C.2000). Al Fayed appealed. Because he has not shown any affirmative reason to overcome the presumption that "person" does not include the government, we affirm.

\* \* \*

Section 1782 provides a mechanism for international or foreign tribunals, or persons interested in proceedings before such tribunals, to enlist the federal courts to acquire testimony, documents, or other items:

(a) The district court of the district in which a *person* resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.... To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A *person* may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

(b) This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

28 U.S.C. § 1782 (emphasis added). No court has yet resolved whether the "person[s]" subject to subpoena in § 1782 include the federal government. Compare *In re Al Fayed*, 210 F.3d 421, 422–23 (4th Cir.2000) (even assuming § 1782 covered the government, the district court properly exercised its discretion to deny Al Fayed's application for a subpoena of the National Security Agency); *In re Kevork*, 788 F.2d 566, 568 (9th Cir.1986) (affirming issuance of subpoena to three FBI agents under § 1782 at behest of Ontario Supreme Court, but issue of statute's coverage of government was not raised).

Plainly § 1782 neither excludes nor includes the sovereign explicitly. The Dictionary Act, whose definitions govern the meaning of acts of Congress "unless the context indicates otherwise," says that the word "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. The Supreme Court has construed prior similar language to exclude the United States, *United States v. United Mine Workers of America*, 330 U.S. 258, 275, 67 S.Ct. 677, 91 L.Ed. 884 (1947),[1] and to find that "person" excludes states, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69–70 & nn. 8–9, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), but does include municipalities, *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 688–89, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (construing "person" to include municipalities in statute enacted when Dictionary Act said that the word encompassed "bodies politic and corporate").

■ More generally, the Court has repeatedly held that the word "person" in a statute does not include a sovereign government absent affirmative evidence of such an inclusory intent. It applied the principle just this year in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, —— U.S. ——, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000), when it decided that a state or state agency was not a person within the meaning of the False Claims Act's provision exposing to liability "[a]ny person" presenting a false claim to employees or officials of the United States government. *Id.* at 1866. The Court invoked its "longstanding interpretative presumption that 'person' does not include the sovereign." *Id.* Although it acknowledged that "[t]he presumption is, of course, not a 'hard and fast rule of exclusion,'" it said that the principle "may be disregarded only upon some affirmative showing of statutory intent to the contrary." *Id.* at 1867. See also *International Primate Protection League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 82–83, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991) (noting that statutes employing the word "person" are typically interpreted to exclude the sovereign and holding that the federal government is not a "person" under statute providing removal authority); *Will v. Michigan Dep't of State Police*, 491 U.S. at 64, 109 S.Ct. 2304; *United States v. Cooper Corp.*, 312 U.S. 600, 604, 61 S.Ct. 742, 85 L.Ed. 1071 (1941); cf. *Galvan v. Federal Prison Indus., Inc.*, 199 F.3d 461, 468 (D.C.Cir.1999) (holding that use of the word "person" in the False Claims Act does not constitute waiver of the federal government's sovereign immunity).

Al Fayed suggests that the principle is inapplicable here because the case poses no risk of monetary relief against the sovereign—only the issuance of a subpoena; he notes that the Court has sometimes urged concepts of sovereign immunity in support of the principle. See, e.g., *Will v. Michigan Dep't of State Police*, 491 U.S. at 64, 109 S.Ct. 2304. But his own brief undermines the theory, acknowledging that sovereign immunity principles come into play when parties seek judicial action to *compel compliance* with a subpoena.

---

**1.** The version of the Dictionary Act in effect in 1932 when Congress passed the Norris–La-Guardia Act (construed in *United Mine Work-* *ers*) said that "the word 'person' may extend and be applied to partnerships and corporations." 1 U.S.C. § 1 (1926).

See, e.g., *COMSAT Corp. v. National Science Foundation*, 190 F.3d 269, 277 (4th Cir.1999). Because of concerns over judicial interference with executive discretion, the sovereign immunity doctrine played an active (if hotly disputed) role in suits seeking nonmonetary relief, see, e.g., *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 695–96, 703–04, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Land v. Dollar*, 330 U.S. 731, 738–39, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), until Congress waived it for all non-monetary claims in the 1976 amendment of 5 U.S.C. § 702. Act of Oct. 21, 1976, Pub.L. No. 94–574, 90 Stat. 2721. That waiver occurred long after the original enactment of what is now § 1782, and well after its last major amendment in 1964.[2] Act of Oct. 3, 1964, Pub.L. No. 88–619, § 9(a), 78 Stat. 995, 997. Whatever the ultimate application of sovereign immunity, it seems naive to say that any sovereign immunity basis for the interpretive presumption has vanished merely because a waiver may ultimately be applicable. As the district court here observed (in a different context), the proposition that the federal government has waived sovereign immunity from a federal-court subpoena by virtue of 5 U.S.C. § 702 must rest on the "premise that a federal-court subpoena implicates sovereign immunity." *In re: Al Fayed*, 91 F.Supp.2d at 139.

In any event, the Supreme Court applies the constructional principle against finding "person" to include a sovereign even in the absence of sovereign immunity or comity concerns. It did so, for example, in *Breard v. Greene*, 523 U.S. 371, 378, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998), holding that Paraguay was not a "person" entitled to sue under 42 U.S.C. § 1983, and in *United States v. Cooper Corp.*, 312 U.S. at 604–05, 61 S.Ct. 742, holding that the United States was not a "person" entitled to bring treble damage actions under § 7 of the Sherman Act. But compare *Georgia v. Evans*, 316 U.S. 159, 161–62, 62 S.Ct. 972, 86 L.Ed. 1346 (1942) (holding that states were "person[s]" entitled to sue for treble damages under § 7 of the Sherman Act because they, unlike the federal government, had no other mechanisms to enforce the Act's provisions).

■ The Court has identified a range of sources for grounds to overcome the presumption: "[O]ur conventional reading of 'person' may therefore be disregarded if '[t]he purpose, the subject matter, the context, the legislative history, [or] the executive interpretation of the statute ... indicate an intent, by the use of the term, to bring state or nation within the scope of the law.'" *International Primate*, 500 U.S. at 83, 111 S.Ct. 1700 (internal citation omitted). In this case none of these sources indicates an intent to override the presumption.

Al Fayed's strongest shot at countervailing the canon is Rule 45 of the Federal Rules of Civil Procedure, governing the issuance and enforcement of subpoenas. He notes that § 1782 expressly directs application of the Federal Rules, and argues that the word "person" as it appears in Rule 45 includes the federal government. But in fact the meaning of "person" in Rule 45 is not so simple. Where the government is a party to a suit it is, unsurprisingly, subject to the rules. See *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). But as to discovery against the government when it is not a party, the courts are in some disarray. The Ninth Circuit has ruled broadly that the federal discovery rules apply to the government even as a non-party, *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 780 (9th Cir.1994), but at least two circuits, the Second and Fourth, have tak-

---

2. 1996 saw a minor addition. To provide assistance to the International Tribunals for Rwanda and (former) Yugoslavia, Congress added the phrase "including criminal investigations conducted before formal accusation" after "proceeding in a foreign or international tribunal" in the first sentence. National Defense Authorization Act for Fiscal Year 1996, Pub.L. No. 104–106, Div. A, Tit. XIII, Subtit. E, § 1342 (b), 110 Stat. 186, 486 (1996).

en a more restrictive approach. Rejecting *Exxon* and viewing 5 U.S.C. § 702 as the only applicable waiver of sovereign immunity, they have applied the Administrative Procedure Act, with the result that review of an agency's response to a subpoena proceeds as an ordinary APA case, with all the standard deference principles. *United States Environmental Protection Agency v. General Electric Co.*, 197 F.3d 592, 598 (2d Cir.1999); *COMSAT Corp. v. National Science Foundation*, 190 F.3d 269, 277–78 (4th Cir.1999). See also *Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194, 1197–98 (11th Cir.1991). Cf. *Houston Business Journal, Inc. v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1212 (D.C.Cir.1996) (assuming application of waiver under 5 U.S.C. § 702); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 398 n. 2 (D.C.Cir.1984) (where no party raised possible sovereign immunity issue, the court noted prior cases that "assumed the nonapplicability of sovereign immunity" to a subpoena directed against the government as a non-party and declined to analyze the assumption). Thus § 1782's cross-reference to the Federal Rules can hardly be said to send a contextual signal that might overcome the standard presumption.

Even if the government as a non-party were subject to discovery like any other party under the rules, we note that this alone could not create jurisdiction if § 1782 did not. The Federal Rules of Civil Procedure "shall not be construed to extend or limit the jurisdiction of the United States district courts." Fed.R.Civ.P. 82. The district court must have jurisdiction under § 1782 before the discovery rules become operative. See *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988)

("[T]he subpoena power of a court cannot be more extensive than its jurisdiction."); *Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir. 1959) ("A rule of procedure, of course, however convenient and salutary it may be, is without efficacy to extend the jurisdiction of a court.").

Al Fayed also seeks support in the general purpose of § 1782 and its legislative history. One can certainly formulate the goals of the statute at a high level of generality, and on occasion Congress has done so for § 1782 (as it does for many statutes). A Senate Judiciary Committee report supporting the 1964 amendment, for example, expressed the goal of "providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects," and thereby "invit[ing] foreign countries similarly to adjust their procedures." S.Rep. No. 1580, at 2 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3783. See also *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2d Cir.1996) (relying on the report); *Malev Hungarian Airlines v. United Technologies Int'l Inc.*, 964 F.2d 97, 100 (2d Cir.1992) (same). But the breadth of the goals as a general matter does little or nothing to answer the question before us—whether Congress intended, in pursuit of those goals, to impose responsibilities and burdens on federal agencies. Nor do we find any help in Al Fayed's point that the successive amendments, since the statute's origin in 1855, have given it "increasingly broad applicability." See *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d at 41. In fact the 1863 Act restricted the initial 1855 statute,[3] but regardless of the direction of the successive changes, none addressed the issue here.

As Al Fayed has provided no affirmative evidence to disturb the presumption that

---

3. The 1855 statute authorized federal courts, upon receipt of letters rogatory from foreign courts, to compel witnesses to testify. Act of March 2, 1855, ch. 140, § 2, 10 Stat. 630. In 1863, the initial statute was restricted to allow federal courts to obtain testimony only in "suit[s] for the recovery of money or property ... in any foreign country with which the United States are at peace, and in which the government of such foreign country shall be a party or shall have an interest." Act of March 3, 1863, ch. 95, § 1, 12 Stat. 769.

"person" excludes the sovereign, we affirm the district court's order quashing the subpoena.

*So ordered.*