Stacey L. ROBINSON, Plaintiff,

v.

CITY OF PHILADELPHIA, Defendant.

Civ.A. No. 04–3948.

United States District Court,
E.D. Pennsylvania.

Nov. 10, 2005.

Brian R. Mildenberg, Sherri J. Braunstein, Mildenberg & Stalbaum PC, Philadelphia, PA, for Plaintiff.

Stephen C. Miller, City of Philadelphia Law Dept., Philadelphia, PA, for Defendant.

### MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

This is a section 1983 action in which Plaintiff Stacey Robinson ("Robinson") alleges that her former employer, Defendant City of Philadelphia (the "City"), took certain illegal actions against her in retaliation for her cooperation with a federal criminal investigation of corruption within City government. Pending before the Court are the City's Motions to Place this Case in Civil Suspense Until Such Time as the Investigation of the Grand Jury is Concluded or, Alternatively, to Compel Depositions and Requests for Production of Documents. For the reasons stated below, the Motions are denied, with prejudice as to some parts and without prejudice as to other parts.[1]

## I. PROCEDURAL HISTORY & FACTUAL BACKGROUND

### A. Introduction

Robinson worked full-time at the Philadelphia International Airport (the "Airport"), which is owned by the City. In February 2003, she was temporarily appointed Acting Airport Properties Manager. As part of her new position, Robinson was responsible for ensuring that concession stands within the Airport complied with various regulations. In spring of 2003, Robinson raised concerns about the security roll-down grille at one of the Airport's restaurants. She denied the restaurant owner's request "to leave the improper roll-down gate in place and insisted that the grille be changed to meet the design criteria for the new terminal."[2] As a result, starting in fall of 2003, she alleges she fell out of favor with her line supervisor and the Airport chief of staff.

On January 28, 2004, two Federal Bureau of Investigation ("FBI") agents visited Robinson at her home and sought her assistance with an ongoing investigation of corruption in various City agencies, including the Airport. They also informed Robinson that FBI wiretaps had recorded Airport personnel discussing her as someone to "get out of the way." Robinson subsequently entered into an agreement with the investigating agents, including Officer Stephen Synder ("Officer Synder"),[3] and Assistant United States Attorney Joan L. Markman ("AUSA Markman") to engage in further discussions relating to their investigation.

Robinson alleges that, after notifying her supervisors of the FBI visit and as a result of her cooperation with the FBI, the City retaliated against her by excluding her from consideration for a permanent appointment to the position of Airport Properties Manager, excluding her from meetings, and not assigning her work.

On August 18, 2004, Robinson filed suit in this Court, alleging claims under section 1983, wrongful discharge in violation of Pennsylvania public policy, and violation of the Pennsylvania whistleblower law.

### B. The Discovery Dispute

Robinson's case is now in discovery. In an effort to learn more about Robinson's conversations with the FBI, the City noticed the depositions of Officer Synder and AUSA Markman (collectively, the "federal officials"). The deposition notices were accompanied by subpoenas requesting that the federal officials produce certain documents relating to their investigation.

Upon learning of the scheduled depositions, the United States Attorney's Office for the Eastern District of Pennsylvania contact-

---

1. The Court jointly addresses the City's Motions in this single memorandum opinion because each Motion raises similar arguments and claims for discovery-related relief. Also addressed herein is the parties' Joint Motion for an Extension of Time to Complete Discovery.

2. Pl.'s Compl. ¶ 20.

3. Officer Synder is a police officer with the Philadelphia Police Department who was a deputized Federal Officer with the FBI at the time of the events giving rise to this suit.

ed the City to request the cancellation of the federal officials' depositions. In a letter dated July 15, 2005 from U.S. Attorney Patrick Meehan to the City's counsel, the U.S. Attorney laid out his specific and general objections to the depositions. He asserted, among other things, that Federal Rule of Civil Procedure 45 does not authorize the issuance of subpoenas to government agencies and employees who are not party to the action. He also stated that the City's request for testimony and documents "would clearly jeopardize the integrity of an ongoing investigation and could disclose the existence of matters which may be occurring before a grand jury." [4]

On July 19, 2005, the City deposed Robinson. When asked about her conversations with the FBI, Robinson was directed by her counsel not to answer in light of the U.S. Attorney's letter. Her counsel specifically stated: "My concern is, though, that my client would potentially violate some privilege of the government or of the investigation or law, the federal law with respect to her participation and cooperation with the investigation." [5] In a teleconference with the Court to resolve the impasse, the Court directed the City not to question Robinson regarding her conversations with the FBI until the parties could fully brief the issue for the Court. The deposition ended immediately thereafter.

The City has filed the instant Motions, seeking to compel further discovery from Robinson and the federal officials, or, alternatively, to place this case in suspense pending the outcome of the FBI's investigation.

## II. DISCUSSION

### A. Whether Robinson Should be Compelled to Provide Discovery

█ The City seeks, quite reasonably, to depose Robinson about her conversations with the FBI. Robinson does not oppose the

City's request, so long as the government does not object to her testifying on these matters. She states, "After the government confirms that [she] is in fact permitted to testify to such matters as stated herein, [she] shall testify fully and completely to all matters relating to the FBI investigation, without waiving the usual privileges and objections raised during a deposition." [6] The City replies that Robinson's current willingness to testify only if the government permits is no different than her position at the July 19th deposition.

The City correctly points out that the parties' current arguments leave the Court in no better position than before to decide this issue. Since the scope of permissible deposition testimony turns on what, if any, objections the government may raise and the government is not a party to this action, the Court cannot rule on what Robinson should be compelled to answer without possibly jeopardizing an ongoing criminal investigation. Although Robinson suggests that the government will permit her to testify,[7] the U.S. Attorney's July 15th letter to the City's counsel is the only official position of the government available to the Court. In that letter, the government objected to Robinson's deposition by asserting a variety of privileges. Specifically, it provided:

> Each of the three deponents [Robinson, Officer Synder, and AUSA Markman] also object to the release of any information protected by one or more of the following privileges: the state secrets privilege, deliberative process privilege, attorney-client privilege, law enforcement privilege, confidential informant privilege, among others, as well as the attorney work product doctrine.[8]

Without more, this Court must decline to compel further discovery in a matter where any of these privileges are raised.

---

**4.** Def.'s Mots. to Compel Ex. B at 3.

**5.** Pl.'s Dep. at 117.

**6.** Pl.'s Resp. to Def.'s Mot. at 8.

**7.** In her Response to the Motion, Robinson states: "Upon information and belief, it appears

as if the government is maintaining the position that [Robinson] is permitted to testify to any and all matters relating to her conversations with the FBI." Pl.'s Resp. to Def.'s Mot. at 8.

**8.** Def.'s Mots. to Compel Ex. B at 3.

## B. Whether the Federal Officials Should be Compelled to Provide Discovery

The second issue raised is whether federal agencies and employees must comply with a subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure where they are not a party to the action. Rule 45 provides, in pertinent part, that "every subpoena shall . . . command each person to whom it is directed to attend and give testimony or to produce and permit inspection and copying [of documents]."[9] Therefore, the Court must specifically decide whether the word "person" in Rule 45 includes the federal government and its employees. The Third Circuit has never addressed this issue, and this Court's decision is thus informed by related Supreme Court precedent and persuasive authority from other jurisdictions.

■ The Supreme Court has followed a "longstanding interpretative presumption that 'person' does not include the sovereign."[10] "Although not a hard and fast rule of exclusion, the presumption may be disregarded only upon some affirmative showing of statutory intent to the contrary."[11] The Supreme Court's presumption is based on commonsense: the word "person" is not used ordinarily to refer to a government.[12]

■ In a series of recent decisions, the District of Columbia Circuit and its lower courts have applied this presumption to the issue at bar. In *Al Fayed v. CIA,* that Circuit held that the word "person" in 28 U.S.C. § 1782, a statute similar to Rule 45, does not include the federal government.[13] Then, in *Linder v. Calero–Portocarrero,* the D.C. Circuit suggested—but did not hold—that Rule 45 should be similarly interpreted to exclude the federal government.[14] Lower federal courts in the D.C. Circuit have subsequently applied the principles underlying *Al Fayed* and *Linder* to hold that "person" in Rule 45 does not include federal government agencies.[15] Those cases found no evidence rebutting the presumption that Rule 45 was drafted to exclude the federal government from its operation.[16]

This Court agrees with the holdings in the D.C. Circuit cases. Absent some evidence rebutting the presumption that the word "person" in Rule 45 does not include the federal government, which the City has failed to provide here, Rule 45 does not apply to the federal officials. Therefore, this Court is without authority to compel the federal officials to comply with a subpoena issued pursuant to Rule 45.[17]

9. Fed.R.Civ.P. 45(a)(1)(C).

10. *Vt. Agency of Nat'l Res. v. United States ex rel. Stevens,* 529 U.S. 765, 780, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (holding that a state or agency is not a "person" subject to qui tam liability under the False Claims Act); *see Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund,* 500 U.S. 72, 82–83, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991) (explaining that the word "person" in statutes is usually interpreted to exclude the sovereign).

11. *Vt. Agency,* 529 U.S. at 781, 120 S.Ct. 1858.

12. *See United States v. United Mine Workers,* 330 U.S. 258, 275, 67 S.Ct. 677, 91 L.Ed. 884 (1947) ("In common usage that term ['person'] does not include the sovereign, and statutes employing it will ordinarily not be construed to do so.")

13. 229 F.3d 272, 276–77 (D.C.Cir.2000). Section 1782 provides that the "district court of the district in which a person resides or is found may order him to give his testimony."

14. 251 F.3d 178, 180–81 (D.C.Cir.2001).

15. *See Yousuf v. Samantar,* No. MISC. 05–110 (RBW), 2005 WL 1523385 (D.D.C. May 3, 2005); *United States ex rel. Taylor v. Gabelli,* No. MISC. 04–534 (RJL), 2005 WL 2375173 (D.D.C. May 3, 2005); *Lerner v. District of Columbia,* 362 F.Supp.2d 149 (D.D.C.2005).

16. *See, e.g., Gabelli,* 2005 WL 2375173, at *2.

17. At least one case has squarely held that the word "person" in Rule 45 does include the federal government. *See Connaught Labs., Inc. v. Smithkline Beecham P.L.C.,* 7 F.Supp.2d 477, 480 (D.Del.1998) (holding that the court had authority under Rule 45 to modify and enforce subpoenas against non-party federal agencies). The *Connaught Labs* court based its holding on a prior Ninth Circuit case, *Exxon Shipping v. United States Dep't of Interior,* 34 F.3d 774, 780 (9th Cir.1994) (concluding that "district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action"). However, neither *Connaught Labs* or *Exxon Shipping* persuades this Court. First, those cases fail to address the Supreme Court's long-

■ Moreover, even if this Court had such authority, it would be unwise to exercise that power here. The Court cannot allow the sweeping discovery requests of a party in a civil action to disrupt an ongoing criminal investigation. Although the strict secrecy requirement of Federal Rule of Criminal Procedure 6(e) applies only to the actual proceedings of a grand jury—not the information underlying those proceedings [18]—the Court is reluctant to permit discovery from the federal officials where what they know and said is at the periphery of this civil case but possibly at the heart of the ongoing criminal investigation.

### C. Whether to Place this Matter in Suspense

■ In the event the Court declines to compel discovery of Robinson and the federal officials, the City seeks to place this case in suspense pending the outcome of the FBI's grand jury investigation. The City argues that it cannot effectively defend itself in this action until it obtains full discovery from Robinson and the FBI officials.

The Court declines to place the case in suspense at this moment, as any decision to suspend the case would be premature. If the government does not continue to object to Robinson's testimony, the City's opportunity to question her would sufficiently enable the City to defend itself. Therefore, the Court denies without prejudice the City's request to place this case in suspense.

### III. CONCLUSION

For the forgoing reasons, the City's Motions are denied. An appropriate Order follows.

standing presumption against interpreting "person" to include the federal government. Second, the plaintiff in *Exxon Shipping* was also proceeding against the government under the Administrative Procedure Act, and thus the court there, unlike here, did have some source of authority to exercise against the federal government.

### ORDER

**AND NOW,** this 10th day of November, 2005, upon consideration of Defendant's Motions to Place this Case in Civil Suspense Until Such Time as the Investigation of the Grand Jury is Concluded, or, Alternatively, to Compel Depositions and Requests for Production of Documents [Docs. # 12 and # 14], Plaintiff's Responses thereto [Docs. # 17 and # 18], and Defendant's Reply [Doc. # 19], and consistent with the attached Memorandum Opinion, it is hereby **ORDERED** that the Motions are **DENIED.** It is further **ORDERED** as follows:

1. Defendant's request to compel Plaintiff Stacey L. Robinson to fully and completely answer any questions regarding her conversations with the FBI is **DENIED WITHOUT PREJUDICE;**

2. Defendant's request to compel Joan L. Markman and Stephen Synder to comply with Defendant's discovery requests is **DENIED;**

3. Defendant's request to place this case in suspense is **DENIED WITHOUT PREJUDICE.**

It is further **ORDERED** that the parties' Joint Motion for Extension of Time to Conduct Discovery and to Amend Pretrial Order [Doc. # 13] is **GRANTED.** The parties shall have sixty (60) days from the date of this Order to complete discovery.

It is so **ORDERED.**

18. *See In re Grand Jury Matter,* 682 F.2d 61, 63–65 (3d Cir.1982).