**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

COMSAT CORPORATION,
Plaintiff-Appellee,

v.

NATIONAL SCIENCE FOUNDATION,
Defendant-Appellant,

No. 99-1348

and

NATIONAL SCIENCE FOUNDATION
DOCUMENT CUSTODIAN; ROBERT J.
DICKMAN; HUGH VAN HORN,
Defendants.

COMSAT CORPORATION,
Plaintiff-Appellee,

v.

NATIONAL SCIENCE FOUNDATION;

No. 99-1446

NATIONAL SCIENCE FOUNDATION
DOCUMENT CUSTODIAN; ROBERT J.
DICKMAN; HUGH VAN HORN,
Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-98-108-MC)

Argued: June 8, 1999

Decided: August 23, 1999

Before ERVIN, HAMILTON, and WILLIAMS, Circuit Judges.

Reversed by published opinion. Judge Ervin wrote the opinion, in which Judge Hamilton and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** William Barnett Schultz, Deputy Assistant Attorney General, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Peter Buscemi, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** David W. Ogden, Acting Assistant Attorney General, Helen F. Fahey, United States Attorney, Arthur E. Peabody, Assistant United States Attorney, John C. Hoyle, August E. Flentje, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Lawrence Rudolph, General Counsel, Theodore Miles, Deputy General Counsel, Charisse Carney-Nunes, Assistant General Counsel, NATIONAL SCIENCE FOUNDATION, Washington, D.C., for Appellant. Jacob B. Pankowski, Brian O. Quinn, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, D.C., for Appellee.

_____

**OPINION**

ERVIN, Circuit Judge:

The National Science Foundation ("NSF") appeals from an order requiring the agency to comply with subpoenas issued by an arbitrator during prehearing discovery. The subpoenas demanded that the agency, which was not a party to the arbitration agreement, produce documents and employee testimony related to a construction contract between appellee COMSAT, Inc. ("COMSAT"), and an NSF awardee. We reverse the district court's order and hold as follows: (1) The Federal Arbitration Act, 9 U.S.C.A. §§ 1-307 (West 1999) (the "FAA"), does not authorize an arbitrator to subpoena third parties during prehearing discovery, absent a showing of special need or hardship; (2) when the government is not a party to the underlying action, an agency's refusal to comply with a subpoena must be reviewed under the standards established for final agency actions by the

2

Administrative Procedure Act ("APA"), 5 U.S.C.A. §§ 702 - 8301 (West 1996 & Supp. 1999); and (3) NSF did not violate its own regulations or the APA when the agency decided not to comply with the subpoenas at issue in this case.

I.

Appellant NSF is the government agency charged with supporting much of this nation's federally-funded basic science and engineering research. See 42 U.S.C.A. § 1862(a) (West 1994). In accordance with its congressional mandate, NSF awards grants and fellowships to researchers and enters contractual or cooperative agreements with research institutions.[1] The agency does not engage directly in scientific research. See 42 U.S.C.A. §§ 1862(a)-(c).

Associated Universities, Incorporated ("AUI") is a not-for-profit corporation organized for the purpose of conducting scientific research and education. In 1988 AUI entered a cooperative agreement with NSF, by the terms of which AUI agreed to administer the

_____

[1] Section 6305 of the Federal Grant and Cooperative Agreement Act of 1977, 31 U.S.C.A. §§ 6301 - 6308 (West 1983 & Supp. 1999), explains the nature and purpose of a cooperative agreement:

> An executive agency shall use a cooperative agreement as the legal instrument reflecting a relationship between the United States Government and a ... recipient when --
>
> (1) the principal purpose of the relationship is to transfer a thing of value to State, local government, or other recipient to carry out a public purpose of support or stimulation authorized by a law of the United States instead of acquiring (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government; and
>
> (2) substantial involvement is expected between the executive agency and the State, local government, or other recipient when carrying out the activity contemplated in the agreement.

31 U.S.C.A. § 6305.

The statute distinguishes between "procurement contracts" and "cooperative agreements." See §§ 6303, 6305.

3

National Radio Astronomy Observatory, a network of research telescopes. The cooperative agreement imposed no obligation upon NSF or the government to fund AUI operations beyond the upper limits of the award, which was provisional and subject to congressional appropriations. NSF retained the right to terminate the agreement due to a lack of available funds or for other reasons. The agreement also specified that in the absence of written notice to the contrary from NSF's Grants and Contracts Officer, "the Government shall not be obligated to reimburse the Awardee for any costs in excess of the total amount then allotted to the agreement."

On October 19, 1990, AUI entered into a contract with COMSAT[2] to build a state-of-the art radio telescope in Green Bank, West Virginia (the "Green Bank telescope"), at a cost of $55 million. Some years later, in October of 1997, a dispute arose between the parties over AUI's liability for cost overruns. COMSAT claimed that various acts and omissions by AUI, including after-the-fact changes to the telescope specifications, entitled the contractor to $29 million in additional costs. The contract between AUI and COMSAT contained a mandatory arbitration clause, and pursuant to the contract, the parties submitted the claim to the American Arbitration Association for resolution.

At COMSAT's request, on July 10, 1998, the arbitrator issued a subpoena to NSF requiring the agency to produce all documents related to the Green Bank telescope. NSF declined to comply with this subpoena. The agency responded in writing to COMSAT's counsel, justifying its decision not to comply with citations to NSF regulations governing subpoenas.[3] See 45 C.F.R. § 615.5. By way of further

_____

[2] COMSAT's predecessor corporation, Radiation Systems, Inc., was the original party to this agreement.

[3] Pursuant to 5 U.S.C.A. § 301, executive branch agencies may prescribe regulations for their own internal governance, conduct of business, record keeping, and document custody. Such regulations are commonly known as "housekeeping" regulations, and do not authorize the agency to withhold information from the public. Housekeeping regulations that create agency procedures for responding to subpoenas are often termed "Touhy regulations," in reference to the Supreme Court's decision in United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951). In Touhy the Court ruled that agency employees may not be held in contempt for refusing to answer a subpoena, if prohibited from responding by a superior. See id. at 468.

4

explanation, NSF noted in this letter that COMSAT had already sought substantially the same documents with an August, 1997 Freedom of Information Act ("FOIA") request. See 5 U.S.C.A. § 552(a) (West 1996 & Supp. 1999). NSF had suspended its efforts to comply with that voluminous request because COMSAT had been delinquent in paying the associated photocopying charges.[4]

On August 20, 1998, COMSAT moved the arbitrator to issue the three subpoenas that are the subject of this litigation. One of these subpoenas required the NSF's "Document Custodian" to appear and to produce "[a]ll documents relating to the Green Bank Telescope project."[5] The two additional subpoenas ordered NSF employees Robert Dickman, a liaison to AUI for the telescope program, and Hugh Van Horn, Dickman's supervisor and a former member of the AUI board of trustees, to appear and produce all documents in their possession related to the telescope project. The subpoenas were issued returnable to COMSAT's counsel.

NSF responded on August 25, 1998, with a letter to COMSAT indicating that the agency's prior decision not to produce documents was a final agency decision. This letter also described the agency's analysis of the relevant considerations under its housekeeping or "Touhy" regulations.

Pursuant to NSF's Touhy regulations, when responding to a subpoena in a legal proceeding to which the NSF is not a party, NSF's General Counsel must consider the following:

> (1) Whether allowing testimony and document production would serve the stated purposes of the regulation

_____

[4] NSF states that it identified over 40 linear feet of files that might contain documents responsive to COMSAT's initial FOIA request, and that processing such a request would cost more than $20,000. When so informed, COMSAT agreed to narrow its request, and NSF continued to produce responsive documents until June of 1998.

[5] In its brief COMSAT states that its subpoenas sought only a "small set" of documents not already produced by NSF or AUI. As worded, however, the subpoenas plainly seek "all documents" in NSF's possession that are in any way related to the telescope project.

5

(these are promoting efficient NSF operations, avoiding the involvement of NSF in tangential and controversial issues, maintaining NSF impartiality in relation to private litigants, and protecting sensitive, confidential information and the agency's deliberative process);

(2) Whether allowing testimony or document production is necessary to prevent a miscarriage of justice;

(3) Whether NSF has an interest in the decision that will be rendered in the legal proceeding; and

(4) Whether compliance with the subpoena is in the best interests of NSF and the United States.

See 45 C.F.R. § 615.5(b).

NSF's General Counsel concluded in his written response to COMSAT that NSF would not produce the subpoenaed documents. The Counsel's Touhy analysis reached these conclusions:

(1) Production of the documents would be uneconomical, as the demand is substantially duplicative of COMSAT's earlier FOIA request;

(2) Production would be unnecessarily burdensome because many of the documents originated from AUI and may be discovered from that organization;

(3) NSF has no indemnity or joint defense agreement with AUI, so production would not further the goal of maintaining NSF's neutrality as a third party;

(4) Because the documents are available via FOIA or through AUI, compliance is unnecessary to prevent a miscarriage of justice; thus,

(5) The balance of NSF's and the public's interests favor non-compliance.

6

In this same August 25, 1998, letter to COMSAT's counsel, NSF requested further clarification of COMSAT's justification for seeking to depose Van Horn and Dickman. COMSAT responded with the explanation that these NSF employees had discussed the Green Banks project with AUI officials. NSF responded in turn with a request for additional clarification from COMSAT, and in a September 28, 1998, letter the agency indicated that it had not reached a final decision with respect to the deposition subpoenas. COMSAT then petitioned the federal district court to compel NSF's compliance.

On December 4, 1998, NSF and COMSAT argued the motion to compel before a magistrate judge. COMSAT insisted that by naming NSF in the caption of its motion, it had made the agency a party to the underlying dispute and thereby subjected it to the requirements of Federal Rule of Civil Procedure 45 governing responses to a subpoena. See Fed. R. Civ. P. 45. The magistrate judge accepted this argument and ruled from the bench that NSF could not assert sovereign immunity as a defense to enforcement of the subpoenas.

The magistrate judge concluded further that NSF had waived its right to object to the subpoenas because the agency had ignored its own regulations, which state

> [i]f a response to a demand is required before the General Counsel has made the determination [whether to respond] . . . the General Counsel shall provide the court or other competent authority with a copy of this part, inform the court or other competent authority that the demand is being reviewed, and seek a stay of the demand pending a final determination.

45 C.F.R. § 615.6(c). The magistrate judge then entered an order requiring NSF to comply with the COMSAT subpoenas.

NSF immediately appealed this order to the district court. On January 8, 1999, the parties appeared for a hearing at which the NSF argued that the court should reject the magistrate's finding of waiver because the agency had effectively lodged a Rule 45 objection through its letters to COMSAT. NSF also argued that the FAA does not grant an arbitrator the authority to subpoena third parties for pre-

7

arbitration discovery; that the agency's actions must be reviewed under the standards of the APA; and that, at least with respect to the deposition subpoenas, jurisdiction was lacking because the agency had not reached a final decision regarding compliance.**6**

The district court read the FAA as a broad grant of full subpoena power to arbitrators. The court reviewed NSF's refusal to comply with the arbitration subpoenas under the standards of the Federal Rules of Civil Procedure. Because the NSF did not seek judicial relief before the return date for the subpoenas, the court found that the agency had violated its own Touhy regulations and thereby waived any right to object or to seek a protective order. The court then affirmed the ruling of the magistrate judge.

II.

The situs of the pending arbitration is Reston, Virginia; therefore the district court for the Eastern District of Virginia properly assumed jurisdiction pursuant to § 7 of the FAA. See 9 U.S.C.A. § 7 (West 1999). Our jurisdiction over an appeal from the court's order enforcing the subpoenas arises from 28 U.S.C.A. § 1291 (West 1993).

At the outset, we note that although our review of the district court's legal conclusions is de novo, see Burgin v. Office of Personnel Management, 120 F.3d 494, 497 (4th Cir. 1997), our review of NSF's refusal to comply with the subpoenas is governed by the Administrative Procedure Act ("APA"). See 5 U.S.C.A. §§ 702, 704, 706 (West 1996). When the government is not a party, the APA provides the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas. See Smith v. Cromer, 159 F.3d 875, 881 (4th Cir. 1998) ("Cromer's remedy, if any, for the Justice Department's [refusal to permit its employees to testify] may be found in the [APA] . . . . ").

_____

**6** NSF also argued that the COMSAT subpoenas, which lacked instructions on how to challenge a subpoena, were facially defective when judged by the standards of Rule 45. Because we reverse on other grounds, we do not reach the issue of alleged defects in the subpoenas.

8

The APA waives the government's sovereign immunity from suit and permits federal court review of final agency actions, when the relief sought is other than money damages and the plaintiff has stated a claim "that an agency or an officer or employee thereof acted or failed to act in an official capacity . . . ." 5 U.S.C.A. § 702. As the Supreme Court has instructed, an agency action may be considered "final" only when the action signals the consummation of an agency's decisionmaking process <u>and</u> gives rise to legal rights or consequences. <u>See</u> <u>Bennett v. Spear</u>, 520 U.S. 154, 177-78 (1997). A reviewing court may set aside a final agency action when the action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. <u>See</u> 5 U.S.C. § 706.

Additionally, we preface our analysis with the observation that, despite COMSAT's attempts to characterize NSF as a party-in-interest in the arbitration proceeding, NSF was not a party to the Green Bank telescope contract and is not liable to pay any judgment that the arbitrator might award.**7** Moreover, the arbitration hearing had not yet commenced when the subpoenas issued. Thus, this case tests the scope of an arbitrator's authority, pursuant to the FAA, to subpoena witnesses and documents from a third-party federal agency for the purpose of pre-hearing discovery.

A.

Before we assert subject matter jurisdiction in this case we must decide whether any of NSF's responses to the subpoenas were "final" agency actions. <u>See</u> 5 U.S.C.A. § 704 (limiting review to "[a]gency action made reviewable by statute and final agency action . . .").

Prior to the return date for the document subpoenas, NSF's general
_____

**7** COMSAT cites the minutes of the meeting of the board of AUI trustees for the company's claim that NSF is obligated to pay any arbitration award. These minutes actually state that while litigation and award expenses are an "allowable cost" under the cooperative agreement, NSF's obligation to secure funding for these costs"is subject to the requirement that the Director [of NSF], in his or her sole discretion, shall determine the appropriateness of the reimbursement of the costs." <u>See</u> Joint Appendix at 108.

9

counsel advised COMSAT in writing that the agency would not pro-
duce the materials demanded. This was a final agency action that is
ripe for our review under the APA.

Prior to the date scheduled for Van Horn and Dickman's deposi-
tions, NSF notified COMSAT's counsel that the agency required
additional information to decide whether to allow its employees to
comply with the subpoenas issued to them. NSF subsequently stated
in its brief to this Court that the agency has not reached a final deci-
sion as to whether to permit its employees to comply with the deposi-
tion subpoenas. Yet during oral argument NSF's counsel appeared to
concede that the agency had in fact reached a final decision not to
permit its employees to testify. Counsel then invited this Court to
review that decision.

Ordinarily we would consider whether the decision as it was
announced by counsel at oral argument was sufficiently "final" to per-
mit review, before we would proceed to address the merits of the
agency's action. Further analysis of this issue is unnecessary, how-
ever. We may assume without deciding that NSF reached a final deci-
sion not to comply with the deposition subpoenas because our holding
turns, not on finality or lack thereof in this particular agency action,
but rather on the scope of an arbitrator's subpoena power under the
FAA.

B.

The subpoena powers of an arbitrator are limited to those created
by the express provisions of the FAA. The statute provides, in perti-
nent part:

> arbitrators . . . may summon in writing any person to attend
> before them or any of them as a witness and in a proper case
> to bring with him or them any book, record, document, or
> paper which may be deemed material . . . .

9 U.S.C.A. § 7.

Nowhere does the FAA grant an arbitrator the authority to order
non-parties to appear at depositions, or the authority to demand that

10

non-parties provide the litigating parties with documents during pre-hearing discovery. By its own terms, the FAA's subpoena authority is defined as the power of the arbitration panel to compel non-parties to appear "before them;" that is, to compel testimony by non-parties at the arbitration hearing. See id.

In disregard of the plain language of the statute, COMSAT cites a provision of the FAA that permits a federal district court to enforce an arbitrator's subpoena, see 9 U.S.C.A.§ 7, seemingly for the proposition that an arbitrator's subpoena authority is coextensive with that of a federal court. This is decidedly not the case. The FAA provides that a federal court may "compel the attendance of [a subpoenaed person] before said arbitrator . . . ." 9 U.S.C.A. § 7 (emphasis added). The enforcement provision does not expand the arbitrator's subpoena authority, which remains simply the power to compel non-parties to appear before the arbitration tribunal.

Furthermore, once subpoenaed by an arbitrator the recipient is under no obligation to move to quash the subpoena. By failing to do so, the recipient does not waive the right to challenge the subpoena on the merits if faced with a petition to compel. **8** The FAA imposes no requirement that a subpoenaed party file a petition to quash or otherwise challenge the subpoena; the Act's only mechanism for obtain-

_____

**8** The district court found that NSF waived its right to object to the subpoenas because the agency did not act pursuant to 45 C.F.R. § 615.6(c), which requires NSF to notify the court "or other competent authority" that a subpoena is being reviewed and to seek a stay pending a final agency determination. Id. NSF argues that COMSAT requested that such notice be given to COMSAT's counsel, not the arbitrator, and the agency acted accordingly.

We need not settle this procedural squabble. NSF's compliance with its own Touhy regulations, which protect its employees from contempt proceedings, has no bearing on the agency's right to object to the arbitrator's subpoena. See § 615.1(d) (stating that these regulations "may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States"). See also Smith, 159 F.3d at 880 (holding that the Justice Department's Touhy regulations are intended for internal governance only and do not create any right to disclosure of agency records).

11

ing federal court review is the petition to compel. See 9 U.S.C.A. § 7 ("[U]pon petition the . . . district court . . . may compel the attendance of such person.").

The rationale for constraining an arbitrator's subpoena power is clear. Parties to a private arbitration agreement forego certain procedural rights attendant to formal litigation in return for a more efficient and cost-effective resolution of their disputes. See Burton v. Bush, 614 F.2d 389, 390-91 (4th Cir. 1980) ("When contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial."). A hallmark of arbitration-- and a necessary precursor to its efficient operation -- is a limited discovery process. See id. at 391 (concluding that limitations on discovery promote the "policy underpinnings of arbitration [which are] speed, efficiency, and reduction of litigation expenses."). Consequently, because COMSAT and AUI have elected to enter arbitration, neither may reasonably expect to obtain full-blown discovery from the other or from third parties.

Yet COMSAT argues quite persuasively that in a complex case such as this one, the much-lauded efficiency of arbitration will be degraded if the parties are unable to review and digest relevant evidence prior to the arbitration hearing. For this reason, in Burton we contemplated that a party might, under unusual circumstances, petition the district court to compel pre-arbitration discovery upon a showing of special need or hardship. 614 F.2d at 391.

We do not now attempt to define "special need," except to observe that at a minimum, a party must demonstrate that the information it seeks is otherwise unavailable. COMSAT did not attempt to make such a showing before the district court, and we infer from the record that no such showing would be possible. As COMSAT acknowledged, many if not all of the documents it sought were obtainable from AUI or with a FOIA request. In fact, the record indicates that prior to filing its petition to compel, COMSAT obtained hundreds of responsive documents from NSF via the FOIA process, continuing up to the point when COMSAT abandoned its FOIA request by ceasing to pay photocopying charges. Likewise, COMSAT has not attempted to show that any information it might obtain from Van Horn and

12

Dickman, both employees of non-party NSF, is otherwise unavailable from opposing party AUI.

C.

Assuming arguendo that COMSAT could yet make the requisite showing of special need, we examine whether the NSF's refusal to comply with the COMSAT subpoenas was an arbitrary and capricious agency action taken in violation of the APA. We apply the APA's deferential standard of review in full recognition of the fact that one of our sister circuits has decided otherwise. In Exxon Shipping Co. v. U.S. Dept. of Interior the Ninth Circuit held that non-party federal agencies must produce evidence in response to the subpoenas of private litigants, subject only to the court's discretionary right to limit burdensome discovery under Rules 26 and 45 of the Federal Rules of Civil Procedure. 34 F.3d 774, 778-779 (9th Cir. 1994). We decline to follow this holding.

1.

COMSAT does not contest the underlying validity of NSF's Touhy regulations. Instead, COMSAT maintains that such housekeeping regulations do not "immunize" an agency from the duty to comply with a federal subpoena. We agree, but only in the following respect: it is sovereign immunity, not housekeeping regulations, that gives rise to the Government's power to refuse compliance with a subpoena. As we have acknowledged, "subpoena proceedings fall within the protection of sovereign immunity even though they are technically against the federal employee and not against the sovereign," Boron Oil Co. v. Downie, 873 F.2d 67, 71 (4th Cir. 1989); thus, in the context of an agency's response to a third-party subpoena, "the proper method for judicial review of the agency's final decision pursuant to its regulations is through the Administrative Procedure Act." United States v. Williams, 170 F.3d 431, 434 (4th Cir. 1999). The APA waives sovereign immunity and permits a federal court to order a non-party agency to comply with a subpoena if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner. See id. (holding that the APA is the only avenue of review for a state criminal defendant aggrieved by Justice Department's refusal, pursuant to

13

internal housekeeping regulations, to provide the defense with FBI files).

The Ninth Circuit's Exxon decision abrogates the doctrine of sovereign immunity to a significant degree. Although the decision acknowledges the APA as the source of the congressional waiver of sovereign immunity permitting review of a non-party agency's refusal to comply with a subpoena, see 34 F.3d at 779 n.9, Exxon overlooks an important limitation upon this waiver: courts may reverse an agency's decision not to comply only when the agency has acted unreasonably. See Fishermen's Dock Coop., Inc. v. Brown, 75 F.3d 164, 168 (4th Cir. 1996) ("[C]ourt of appeals review looks to the agency's action to determine whether the record reveals that a rational basis existed for its decision") (citation omitted).

2.

Acting in accordance with the procedures mandated by its regulations, NSF reached an entirely reasonable decision to refuse compliance with COMSAT's document subpoenas. In an August 25, 1998, letter to COMSAT, NSF's general counsel described in detail the agency's Touhy analysis of the costs and benefits associated with producing the subpoenaed documents. Most if not all the documents sought were available through COMSAT's FOIA request or from AUI; therefore NSF's counsel concluded that production would be unnecessarily duplicative and costly. As an agency official must, NSF's counsel also considered whether the public interest and the agency's taxpayer-funded mission would be furthered by compliance.

NSF's counsel answered this question in the negative, and we cannot quarrel with his conclusion. Compliance with the third-party subpoenas issued in this single case, where the litigant sought a tremendous number of agency documents and demanded the presence of agency employees at depositions, would measurably strain agency resources and divert NSF personnel from their official duties. Multiply the cost of compliance by the number of NSF grantees -- almost twenty thousand -- who might become embroiled in similar disputes, or by the limitless number of private litigants who might seek to draw upon NSF's expertise, and the potential cumulative burden upon the agency becomes alarmingly large.

14

When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources. We find NSF's decision reasonable in this case, and so we defer to the agency's judgment, recognizing as we do that "federal judges-- who have no constituency -- have a duty to respect legitimate policy choices made by those who do . . . [because] [o]ur Constitution vests such responsibilities in the political branches." Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 866 (1984) (citation omitted).

The Ninth Circuit grounded its Exxon decision in a steadfast conviction that "the public . . . has a right to everyman's evidence." 34 F.3d at 779 (quoting United States v. Bryan, 339 U.S. 323, 331 (1950)). Our decision today does not call this important principle into question. Private litigants who are dissatisfied with an agency's response to a third-party subpoena or to a FOIA request may still obtain federal court review under the APA. See Williams, 170 F.3d at 434 (in an APA action, federal court may compel agency to produce information unlawfully withheld or unreasonably delayed).

Of course, neither FOIA nor a third-party subpoena will provide the private litigant with guaranteed access, at public expense, to the testimonial evidence of agency employees. When the government is not a party, the decision to permit employee testimony is committed to the agency's discretion. This compromise between public and private interests is necessary to conserve agency resources and to prevent the agency from becoming embroiled in private litigation. See Distaff, Inc. v. Springfield Contracting Corp., 984 F.2d 108, 112 n.2 (4th Cir. 1993).

III.

In summary, we hold today that a federal court may not compel a third party to comply with an arbitrator's subpoena for prehearing discovery, absent a showing of special need or hardship. Moreover, if the non-party recipient of a subpoena is a government agency, principles of sovereign immunity apply. The decision whether to provide documents or employee testimony in response to a third-party subpoena is committed to agency discretion. Accordingly, we review the govern-

15

ment's refusal to comply with such a subpoena under the APA's "arbitrary and capricious" standard for final agency actions.

The district court erred in enforcing the arbitrator's subpoenas. The court also erred when it reviewed NSF's actions under the standards of Federal Rule of Civil Procedure 45, rather than the standard established by the APA. The order enforcing the subpoenas is, therefore,

REVERSED.

16