David **LINDER**, et al., Appellants,

v.

Adolfo **CALERO–PORTOCARRERO,**
et al., Appellees.

**Nos. 00–5122 to 00–5124.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 6, 2001.

Decided June 5, 2001.

Jennifer M. Green argued the cause for appellants. With her on the brief were Beth Stephens and Michael Ratner.

W. Mark Nebeker, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were Wilma A. Lewis, U.S. Attorney at the time the brief was filed, R. Craig Lawrence and Mark E. Nagle, Assistant U.S. Attorneys.

Before: GINSBURG, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

This case began as an action to enforce subpoenas *duces tecum* served on various federal agencies, including the Departments of Defense and State and the Central Intelligence Agency. The agencies are not parties to the Florida lawsuit generating these discovery requests. Aspects of the case were before this court in *Linder v. Department of Defense*, 133 F.3d 17 (D.C.Cir.1998), and we assume familiarity with that opinion.

In this round, the Linders, plaintiffs in the Florida case, object to the district

court's ruling compelling the Defense Department, the State Department, and the CIA to comply with the expanded subpoenas on condition that the Linders pay "half the reasonable copying and labor costs." *Linder v. Calero–Portocarrero*, 180 F.R.D. 168, 177 (D.D.C.1998); *Linder v. Calero–Portocarrero*, 183 F.R.D. 314, 322–23 (D.D.C.1998); *Linder v. Calero–Portocarrero*, 31 F.Supp.2d 134, 136 n. 4 (D.D.C. 1998). The court based its ruling on the following language in FED.R.CIV.P. 45(c)(2)(B): "an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded." We asked at oral argument whether sovereign immunity shielded federal agencies from third-party subpoenas under Rule 45 on the basis that the United States is not a "person" as Rule 45 uses the term. We called for supplemental briefing on this question in light of *Al Fayed v. CIA*, 229 F.3d 272 (D.C.Cir.2000), and because sovereign immunity would bar our exercise of jurisdiction. *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1216 (D.C.Cir.1997).

## I.

■■ After considering the supplemental briefs we have concluded that federal agencies cannot, in view of our precedents, claim sovereign immunity to avoid compliance with third-party subpoenas. Whether, as a matter of interpretation, the word "person" in Rule 45 includes the federal government is a non-jurisdictional question the government failed to raise in the district court and we therefore express no opinion on it.

In authorizing parties to serve subpoenas on "persons" who are not parties to litigation, Rule 45 states: "Every subpoena shall ... command each person to whom it is directed to attend and give testimony or to produce and permit inspection and copying" of documents or tangible things. FED.R.CIV.P. 45(a)(1)(C). The courts of appeals are not entirely in agreement on their approach to Rule 45 when the object of the third-party subpoena is the federal government.

In *Exxon Shipping Co. v. U.S. Department of Interior*, 34 F.3d 774, 778 (9th Cir.1994), the Ninth Circuit ruled that sovereign immunity is no bar to compelling the testimony of federal officers under the federal discovery rules. Congress waived the sovereign immunity of the United States with regard to all actions that seek "relief other than money damages" in 5 U.S.C. § 702. 34 F.3d at 779 n. 9. Third-party subpoenas do not seek damages and so the court held that federal agencies must comply with Rule 45 subpoenas unless the district court, exercising its discretion under the protective provisions of Rules 45 and 26, relieves them of that obligation. *Id.* at 778–79.

In *COMSAT Corp. v. National Science Foundation*, 190 F.3d 269 (4th Cir.1999), the National Science Foundation refused to comply with a third-party subpoena issued under Rule 45. The Fourth Circuit, like the Ninth, concluded that 5 U.S.C. § 702 waived the government's sovereign immunity, but held that because the waiver appeared in the Administrative Procedure Act (APA), the standard of review set forth in that act, and codified at 5 U.S.C. § 706, controlled. 190 F.3d at 274. The court therefore reviewed the agency's refusal to provide the subpoenaed material under the "arbitrary and capricious" standard. *Id.* at 277–78 (recognizing its disagreement with *Exxon Shipping*). The Second Circuit, agreeing with *COMSAT*, has also directed a district court to review an agency's refusal to produce documents requested under Rule 45 under the "arbi-

trary and capricious" standard. *EPA v. General Elec. Co.,* 197 F.3d 592, 599 (2d Cir.1999).

We too have determined that sovereign immunity is not a defense to a third-party subpoena. *Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 398 n. 2 (D.C.Cir.1984), stated: "Since at least 1965 . . . this court has assumed the nonapplicability of sovereign immunity" to a nonparty subpoena directed at the government. We found "no cause to upset a steady course of precedent by attempting to graft onto discovery a broad doctrine of sovereign immunity." *Id.* More recently, in *Houston Business Journal, Inc. v. Office of the Comptroller,* 86 F.3d 1208, 1212 (D.C.Cir.1996), we stated that sovereign immunity does not insulate the federal government from complying with a Rule 45 subpoena, because in federal court the government has waived its sovereign immunity for actions "seeking relief other than money damages" in 5 U.S.C. § 702. Unlike the Fourth and Second Circuits, we have never read the waiver contained in APA § 702 to be limited by APA § 706. Nothing in the language of § 702 indicates that it applies only to actions brought under § 706, and our decisions have never so held. With respect to Rule 45, we have consistently proceeded under the ordinary standard of review to determine whether a district court properly considered the motion to compel production—inquiring whether the district court abused its discretion in denying or compelling discovery. *See Schreiber v. Society for Savings Bancorp, Inc.,* 11 F.3d 217, 220 (D.C.Cir.1993); *In re Subpoena,* 967 F.2d 630, 633 (D.C.Cir.1992).

■ Our doubts about the applicability of Rule 45 stemmed from *Al Fayed v. CIA,* 229 F.3d 272 (D.C.Cir.2000), a case in which we construed 28 U.S.C. § 1782, a statute similar in effect to Rule 45. The statute permits discovery directed to nonparties in the federal courts by parties to proceedings before foreign and international courts. In relevant part it provides that the "district court of the district in which a person resides or is found may order him to give his testimony. . . ." 28 U.S.C. § 1782(a). Al Fayed sought discovery from the CIA pursuant to this section. We held that the term "person" in § 1782(a) did not include the federal government. *Al Fayed,* 229 F.3d at 276–77. In a statute, "the word 'person' . . . does not include a sovereign absent affirmative evidence of such an inclusory intent." *Id.* at 274. This "presumption is, of course, not a hard and fast rule of exclusion," *id.* (quoting *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 781, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (internal quotations omitted)), but there was no reason not to apply the presumption to § 1782, particularly in light of the Dictionary Act, which defines statutory terms and governs the meaning of those words "unless the context indicates otherwise." 1 U.S.C. § 1. The Dictionary Act defines the word "person" as "corporations, companies, associations, firms, partnerships, societies and joint stock companies, as well as individuals," but does not mention the federal government or its agencies. *Id.*

Although our past decisions have assumed that "person" in Rule 45 included the federal government, we have never expressly so held and our assumption may need to be reexamined in light of *Al Fayed.* But this is not the case in which to undertake the reexamination. Sovereign immunity provides no defense to the government and so there is no jurisdictional problem we need to address. Whether Rule 45's use of the word "person" should exempt the federal government, as *Al Fayed* held in regard to § 1782, is purely a

question of statutory interpretation, a question the government did not raise before the district court. We therefore decline to decide it. *See Marymount Hosp., Inc. v. Shalala,* 19 F.3d 658, 663 (D.C.Cir. 1994).

## II.

The Linders offer four reasons why we ought to reverse the district court's imposition of costs. The first is that the court misapplied Rule 45, contradicting existing case law. As amended in 1991, FED. R.CIV.P. 45(c)(2)(B) provides that when a district court compels production by a non-party the court "shall protect" that person from "significant expense resulting from the inspection and copying commanded." Before the amendment, costs could be shifted, but the decision to do so was within the discretion of the district court. *See United States v. CBS, Inc.,* 666 F.2d 364, 371 n. 9 (9th Cir.1982). As the notes to the amendment explain, the 1991 changes were intended "to enlarge the protections afforded persons who are required to assist the court." FED.R.CIV.P. 45, advisory committee notes.

There are relatively few reported cases applying the new Rule 45. *In re The Exxon Valdez,* 142 F.R.D. 380 (D.D.C. 1992), described the 1991 amendment as representing "a clear change from old Rule 45(b), which gave district courts *discretion* to condition the enforcement of subpoenas on the petitioners paying for the costs of production." *Id.* at 383. The court thought " 'protection from significant expense' does not mean that the requesting party necessarily must bear the *entire* cost of compliance.... There is no indication that [the amendment] intended to overrule prior Rule 45 case law, under which a non-party can be required to bear some or all of its expenses where the equities of a particular case demand it."

*Id.* The district court here considered the factors mentioned in *Exxon Valdez* and in pre–1991 cases dealing with cost shifting: "whether the non-party actually has an interest in the outcome of the case, whether the non-party can more readily bear its costs than the requesting party, and whether the litigation is of public importance." *Linder,* 180 F.R.D. at 177; *Linder,* 183 F.R.D. at 322.

■ The Linders claim the court erred in concluding that fee shifting was mandatory. But Rule 45 requires precisely that—the district court "shall protect" a non-party from "significant expense." Under the revised Rule 45, the questions before the district court are whether the subpoena imposes expenses on the non-party, and whether those expenses are "significant." If they are, the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder "non-significant." The rule is susceptible of no other interpretation.

■ The estimated expenses of compliance here amounted to $199,537.08. Is this amount "significant"? We have no trouble concluding that it is. *Compare Williams v. City of Dallas,* 178 F.R.D. 103, 113 (N.D.Tex.1998) ($9,000 estimate sufficiently significant to shift costs). While a court might take into account the financial ability of the non-party to bear some costs (a question we do not reach today), the district court here was well within bounds in treating expenses of nearly $200,000 as "significant." (Whether the court should have shifted the entire amount is beside the point in light of the Linders' position that they will pay no expenses whatsoever in order to obtain discovery.)

■ According to the Linders, two statutes preclude imposing expenses on them even if Rule 45 means what we think it

means. The first is the Intelligence Authorization Act for Fiscal Year 1998. Pub.L. No. 105–107, 111 Stat. 2252 (1997), codified at 22 U.S.C. § 2715a. Section 307 of the Intelligence Authorization Act states that "it is in the national interests of the United States to provide information regarding the killing, abduction, torture, or other serious mistreatment. of United States citizens abroad," 22 U.S.C. § 2715a(a)(1), and directs federal agencies to "take all appropriate action" to identify information pertaining to such crimes and make it available to the family members of the victims. *Id.* § 2715a(b). The Linders believe this means they are entitled to the subpoenaed material without charge. We think not. The Act creates no enforceable rights on behalf of any party. It provides no cause of action. It is simply a general statement of policy. *See Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). It does not refer to federal discovery rules, and it does not address who should bear the costs of the production of covered information. Even if the Act were enforceable, earlier document production in this case satisfied any obligations the government might have under this legislation. The government has already provided all information generated between January 1, 1984, and December 31, 1988, concerning Benjamin Linder, the attack in which he was killed, and information about other contra attacks in the region in the same time period. *Linder*, 183 F.R.D. at 316–17.

■ The Linders' second statute is the Freedom of Information Act, or more precisely, the public interest exception in FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), requiring documents to be furnished to the requester at no charge or at a reduced charge when this is in the public interest. They also rely on § 552(a)(4)(A)(ii)(III) and argue in the alternative that, at the most, they should only have to pay the search and duplication costs of the documents. We see no basis for believing that FOIA affects the cost-shifting provisions of Rule 45. Rule 45 was amended to include cost-shifting provisions in 1991—long after the relevant FOIA sections became law. *See* Pub.L. No. 99–570, § 1803, 100 Stat. 3207–48, 3207–49 (1986). If the Linders wish to proceed under FOIA, they are of course free to do so. Whether they then could be required to bear some or any of the costs is not for us to say in this case.

The Linders' last argument is that our previous decision in this case compels release of these documents at no cost. There is nothing to this. In that opinion we dealt only with the scope of the subpoenas, not who should bear the costs of production. 133 F.3d at 23–25.

The judgment of the district court that the CIA and Departments of State and Defense need not comply with plaintiffs' subpoenas is affirmed.