**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 23, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

BIGIE LEE RHEA,

    Plaintiff - Appellee,

v.

APACHE CORPORATION,

    Defendant.

------------------------------

ENABLE GAS GATHERING, LLC;
ENABLE MIDSTREAM PARTNERS, LP;
ENABLE GAS GATHERING &
PROCESSING, LLC,

    Movants - Appellants.

Nos. 19-7000 & 19-7066
(D.C. No. 6:14-CV-00433-JH)
(E.D. Okla.)

———————————————————

**ORDER AND JUDGMENT**[*]
———————————————————

Before **HARTZ**, **McHUGH**, and **EID**, Circuit Judges.
———————————————————

This appeal relates to subpoenas Plaintiff Bigie Lee Rhea issued to three

non-parties (Enable). The district court denied Enable's motion to quash, and its

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

discovery orders did not protect Enable from any significant expense it might incur in responding to the subpoenas.  The district court later held Enable in contempt for failing to fully respond and entered an order sanctioning it $1,000 per day for each day its failure to comply continued.  We vacate the district court's orders compelling Enable to produce documents, vacate the district court's order holding Enable in contempt, and remand for further proceedings.

## I.    Background

Enable operates a natural gas gathering system that includes more than 5,400 wells, 9,100 miles of gathering lines, 2,100 miles of miles of transmission lines, and 10 processing plants.  Rhea filed the underlying suit as a class action against one of Enable's largest customers, Apache, alleging Apache systematically underpaid royalty owners for the minerals produced from their wells.  Rhea then issued subpoenas to non-party Enable seeking a wide range of documents related to Enable's entry into, and performance of, contracts with Apache over the span of more than 16 years.  These included:

> [A]ll [d]ocuments concerning or discussing the constituents, pressure and volume of gas passing into [Enable's] gathering system produced from each Apache [w]ell for each month [from January 1, 2000 to present], including any and all gas analyses and gas volume statements on a month-by-month and well-by-well basis."

Aplt. App. Vol. II at 91.  Enable contends there are about 1,000 Apache wells.

The subpoenas also requested "all [d]ocuments and [c]orrespondences concerning" Enable's contracts with Apache and "all contracts for the sale of natural gas and/or NGLs produced from the Apache [w]ells to which [Enable or Enable's]

2

related entities or affiliates are or were parties," "including . . . all [c]orrespondences and [d]ocuments concerning or discussing the negotiation of such contracts, the performance of such contracts, the proposed or actual modification of such contracts, and/or the proposed or actual sale or assignment of such contracts." *Id.*

Enable moved to quash the subpoenas and for an order protecting it from any significant expense it would incur if it were ordered to respond. Enable submitted three affidavits in support of its argument that it would incur significant expense in responding to Rhea's subpoenas. An Enable vice president of system operations stated that "[t]he volume, age and multiple locations of information sought will require [Enable] to retain outside resources and cause a substantial disruption to [Enable's] ongoing business." *Id.* at 108. He estimated that responding to the subpoenas as written would "involve at least thirty-six different, and some obsolete, computer systems," "require hiring approximately twenty-four analysts/experts," and "take over 900 work days to complete." *Id.* at 109.

An Enable senior director of commercial gathering and processing indicated that data from 2005–2008 could only be searched if IT personnel spent two to five days preparing a standalone system to unarchive the applicable data. And he asserted that accessing pre-2005 data "would require [Enable] to retain outside resources to attempt to undertake a series of steps to try to determine the data structure of . . . different, obsolete custom electronic systems, reverse engineer[] those systems, export[] the data to independent, additional servers[,] and creat[e] the documents sought." *Id.* at 124.

3

A vice president of enterprise technology noted that responding to the subpoenas would "require[] [Enable] to expend considerable internal resources." *Id.* at 127. He also explained the difficulties Enable would face in segregating information from the Apache wells due to "[t]he integrated nature" of Enable's system, which "commingl[es] . . . gas" "with different compositions" "from different geographic locations[ and] production zones." *Id.* at 128.

In response to an affidavit presented by Rhea that is not in the record, Enable submitted two follow-up affidavits. These affidavits estimated certain costs of compliance. For a set of data related to the 2005–2008 timeframe, the vice president of system operations stated that Enable did "not have the resources to dedicate to the preparation of . . . servers[,] and [the] restoration and unarchiving" of data that a response would require. *Id.* Vol. III at 101. He estimated the cost to retain outside resources to restore and unarchive the data at $15,000 to $20,000 and that Enable would spend another $50,000 to $90,000 to regenerate and validate requested reports. The vice president of enterprise technology estimated the labor costs of producing responsive emails sent after 2012 at $45,000 to $90,000 and the labor costs of producing older responsive emails at $233,720 to $278,720.

The magistrate judge disregarded Enable's evidence, finding:

> This Court has reviewed the affidavits of individuals from both [Rhea] and Enable concerning the number of hours required to comply with production and the cost associated with production. The inconceivably high estimate of time and expense offered by Enable's affidavit and the lack of basis in fact of [Rhea's] sponsored affidavit leaves this Court with little evidence of undue burden and expense. This Court would note that [Rhea's] expert operated from a position of

4

ignorance to some degree because of a lack of knowledge of the specific hardware and software utilized by Enable in preserving and archiving its records.

*Id.* Vol. IV at 89.

But the magistrate judge did not specify which Enable affidavit offered an "inconceivably high estimate of time and expense" or explain why she found Enable's cost estimates to be "inconceivably high." *Id.* Nor did she make any finding as to the amount of expense compliance *would* entail or whether that expense would be "significant" as a matter of law. She instead focused on the burden imposed by responding and found that "a burden will result but that burden is not undue considering the nature and potential importance of the information to this litigation." *Id.* at 91.

The magistrate judge ultimately denied the motion to quash, narrowed the applicable date range to begin in 2005, and ordered production of responsive documents created from 2005 forward.[1] She did not include any provision protecting Enable from significant expense it might incur in responding to the subpoenas as modified by her order.

In ruling on Enable's objections and motion to reconsider the magistrate judge's order, the district court further narrowed the scope of the ordered production based on clarifications from Rhea and ordered Enable to comply with the magistrate

---

[1] She noted, however, that "[s]hould the production indicate the need for a modification to this date restriction, [Rhea] may seek further production by justifying a broadening of the [time period]." Aplt. App. Vol. IV at 91.

5

judge's order, as further modified. The district court did not address Enable's request for protection from significant expense or otherwise provide a protection to Enable from significant expense resulting from its compliance with the order.

Rhea later filed a motion seeking sanctions against Enable for its alleged failure to comply with the subpoenas. The magistrate judge recommended (1) finding that Enable failed to comply, and (2) imposing a coercive sanction of $1,000 per day for each day that Enable's failure continued.

The district court adopted the report and recommendation. Enable appealed. We granted a limited remand to determine whether Enable had met its obligations under the contempt order during the pendency of the appeal. On limited remand, the district court concluded that Enable had not. Enable appealed that order as well, and we consolidated the two appeals.

Enable claims it has already spent more than $800,000 producing 1,137 gigabytes of data that included 262,368 documents containing nine million pages in response to the subpoenas. It also notes that the amount of the sanction totaled $443,000 as of February 18, 2020.

## II. Discussion

### A. Appellate Jurisdiction

We have jurisdiction to review "final" orders entered by district courts. 28 U.S.C. § 1291. "Generally, pretrial discovery rulings are interlocutory and not appealable as final orders under § 1291." *FTC v. Alaska Land Leasing, Inc.*, 778 F.2d 577, 578 (10th Cir. 1985). But "when appeal after final judgment will not

cure an erroneous discovery order, a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981); *see also Alaska Land Leasing*, 778 F.2d at 578 ("To perfect standing to appeal from a civil pretrial discovery order, a non-party deponent must refuse to comply and submit to a contempt proceeding. Thereafter, an adverse contempt order is final and it may be appealed.").

The district court held Enable in contempt for failing to comply with its discovery orders. We therefore have appellate jurisdiction to review the discovery orders and the contempt order. !

## B. Standard of Review

"We review the district court's rulings on subpoenas for an abuse of discretion." *EEOC v. Dillon Cos.*, 310 F.3d 1271, 1274 (10th Cir. 2002) (internal quotation marks omitted). "A district court abuses its discretion when it bases a decision on either a clearly erroneous finding of fact or an erroneous conclusion of law, or when its ruling manifests a clear error of judgment." *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009). "A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which . . . its . . . judgment is based." *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1191 (10th Cir. 2018) (internal quotation marks omitted).

## C. The District Court's Discovery Orders

An order directing production from a non-party over that party's objection "*must* protect" that party "from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii) (emphasis added).  Application of the rule is mandatory.  *See New Prods. Corp. v. Dickinson Wright, PLLC (In re Modern Plastics Corp.)*, 890 F.3d 244, 252 (6th Cir. 2018) ("[I]f an objection is made and the court orders the non-party to comply, the court must protect a non-party from significant expense[] resulting from compliance."); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (observing that Rule 45(d)(2)(B)(ii) "provides no exceptions" and "leaves no room for doubt that the rule is mandatory"); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) ("The [appellants] claim the court erred in concluding that fee shifting was mandatory.  But Rule 45 requires precisely that . . . .").[2]

The advisory committee's notes clarify that "[t]he court is not required to fix the costs in advance of production, although this will often be the most satisfactory accommodation to protect the party seeking discovery from excessive costs."  Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment.  "In some instances, it may be preferable to leave uncertain costs to be determined after the materials have been

---

[2] We have not decided what constitutes a "significant" expense within the meaning of Rule 45.  But other circuits have suggested that amounts in the range of $9,000 to $20,000 qualify as "significant" under the rule.  *See Legal Voice*, 738 F.3d at 1185 ("[W]e have no trouble concluding that $20,000 is 'significant.'"); *Linder*, 251 F.3d at 182 (concluding that estimated expenses in the amount of $199,537.08 were significant and citing a case where a $9,000 estimate was deemed significant).

produced, provided that the risk of uncertainty is fully disclosed to the discovering party." *Id.*

The district court abused its discretion by failing to apply Rule 45(d)(2)(B)(ii) in its orders directing Enable to produce documents. The district court ordered Enable to produce a wide range of documents related to Enable's entry into, and performance of, contracts with one of its largest customers over the span of more than 11 years. And Enable submitted evidence that responding would be costly. Yet the district court did not evaluate whether the expense would be "significant" within the meaning of Rule 45(d)(2)(B)(ii) or protect Enable from this expense. *See Linder*, 251 F.3d at 182 ("Under [Rule 45(d)(2)(B)(ii)], the questions before the district court are whether the subpoena imposes expenses on the non-party, and whether those expenses are 'significant.' If they are, the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'").

The district court's conclusion that it had little evidence on the amount of expense[3] did not negate its obligation to apply Rule 45(d)(2)(B)(ii). Consistent with the advisory committee notes to Rule 45, it could have ordered Rhea to reimburse Enable for any significant expense it might incur in responding to the subpoenas. But the district court instead framed its Rule 45 analysis in terms of undue burden,

---

[3] The district court reached this conclusion by disregarding five affidavits submitted by Enable and at least one affidavit submitted by Rhea.

finding that "a burden will result but that burden is not undue considering the nature and potential importance of the information to this litigation." Aplt. App. Vol. IV at 91.[4] In *Legal Voice*, the Ninth Circuit reversed where a district court did the same thing, concluding "that the district court erred in its interpretation of Rule 45(d)(2)(B)(ii) by framing the issue in terms of undue burden, rather than significant expense." 738 F.3d at 1184.

Because the district court's orders compelling production failed to apply Rule 45(d)(2)(B)(ii), we vacate the orders and remand to the district court for further consideration of Enable's motion to quash.

## D. The District Court's Sanctions Order

The district court based its sanctions order on Enable's failure to comply with its orders directing Enable to produce documents. Because we vacate the underlying orders, we also vacate the order sanctioning Enable for failing to comply with them. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1342 (10th Cir. 2014) ("[T]his court's order vacating the preliminary injunction means the contempt order and bench warrant stemming from it . . . must be vacated as well."); *Reliance Ins. v. Mast Constr. Co.*, 84 F.3d 372, 376 (10th Cir. 1996) ("[A] claim for civil contempt must fall if the order that was disobeyed is subsequently reversed by . . . the appellate court . . . .").

---

[4] Rule 45(d)(3)(A)(iv) requires district courts to "quash or modify a subpoena that . . . subjects a person to undue burden."

10

**E. Appeal No. 19-7066**

We issued a limited remand "to the district court to determine whether Appellants' post-appeal discovery production complied with the district court's December 3, 2018 civil contempt order that is the subject of this appeal." The district court then entered an order addressing "whether Enable's subsequent production complies with the [c]ontempt [o]rder." Aplt. App. Vol. VIII at 174. The district court concluded that Enable's production did not comply. In No. 19-7066, Enable appeals from this order. Because we vacate the underlying contempt order, we dismiss as moot Enable's appeal from the order finding it non-compliant.

### III. Conclusion

In No. 19-7000, we vacate the district court's orders compelling Enable to produce documents over its objections, vacate the district court's order holding Enable in contempt, and remand for further proceedings. We grant Enable's unopposed motion for leave to file Appellants' Appendix Volume XI under seal. We also deny Enable's pending motion for a limited remand as moot.

We dismiss No. 19-7066 as moot.

Entered for the Court

Allison H. Eid
Circuit Judge

11